UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JORDAN HARPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-CV-0668-CVE-JFJ |
| | ) | [BASE FILE] |
| AETNA LIFE INSURANCE COMPANY, | ) | (Consolidated with 18-CV-0669) |
| a foreign corporation; | ) | |
| INTEGRATED SERVICE COMPANY, | ) | |
| an Oklahoma corporation; | ) | |
| THE INSERV BENEFIT PLAN, and | ) | |
| DONNA MATLOCK, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is plaintiff's challenge to a denial of benefits under an employee benefit plan (the Plan). Plaintiff filed this action seeking to recover benefits and enforce her rights under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 et seq. (ERISA). Plaintiff's husband died in a car accident while allegedly under the influence of amphetamine and methamphetamine. After her claims were denied, plaintiff filed two separate cases in this Court.[1]

Plaintiff named four defendants in her second-filed complaint. She claims that Aetna Life Insurance Company (Aetna) wrongfully denied benefits, and as de facto or functional fiduciaries, Donna Matlock (Matlock) and Integrated Service Company (Inserv)—because Matlock is the human resources manager for Inserv—breached their fiduciary duties by wrongfully managing the Plan.

---

[1] On December 26, 2018, plaintiff filed her first complaint, which was docketed as 18-CV-668-CVE. Later that same day, plaintiff filed a second complaint naming Donna Matlock and the other three defendants in case number 18-CV-669-CVE. Matlock is a defendant in case number 18-CV-669-CVE only. The other three defendants are defendants in both 18-CV-668-CVE-FHM and 18-CV-669-CVE. The cases were consolidated on March 5, 2019. See Dkt. # 27.

Plaintiff's only claim is denial of benefits; she does not state a separate claim for breach of fiduciary duty. See 18-CV-669-CVE-JFJ, Dkt. # 2; 18-CV-668-CVE-JFJ, Dkt. # 2. Plaintiff has filed an opening brief (Dkt. #71), defendants have filed responses (Dkt. ## 72, 75), and plaintiff has filed a reply (Dkt. # 76).

Two issues are before the Court in its de novo review of the record: whether there is substantial evidence that decedent was under the influence of intoxicants at the time of his death; and whether plaintiff otherwise qualifies for benefits as both an employee and a dependent. Plaintiff presents a third purely legal question of Inserv's and Matlock's alleged status as de facto or functional fiduciaries.

## I.

## Background

On December 31, 2017, Douglas Harper (decedent) died in a single vehicle motor accident on Interstate 44 in Creek County, Oklahoma. Dkt. # 71 at 7. He was twenty-eight years old when he died. Dkt. # 68-3, at 80. No one witnessed the accident, and the collision report shows "no skid marks or yaw marks on the road to indicate evasive movement from [the] vehicle . . . ." Dkt. # 68-2, at 102. Decedent's death certificate shows the cause of death as "multiple blunt force injuries." Dkt. # 68-3, at 80. However, both the autopsy report and toxicology report show that decedent was under the influence of drugs at the time of his death. See id., at 65, 73. The autopsy report shows that decedent had "a pipe containing a green leafy substance." Id. at 66. According to the toxicology report, decedent tested positive for 0.35 mcg/mL (0.035 mg%) of amphetamine and 2.2 mcg/mL (0.22 mg%) of methamphetamine post mortem. Id. at 73. Decedent had a prescription for Adderall (an amphetamine) for 30 mg tablets twice daily. Id. at 122. The Winek's Drug & Chemical Blood-

Level Data 2001 chart, located in the administrative record and used to determine the severity of decedent's intoxication, shows that 0.35 mcg/mL (0.035 mg%) of amphetamine is between the therapeutic and toxic range. Id. at 136. The chart shows that 2.2 mcg/mL (0.22 mg%) of methamphetamine is within the toxic range.[2] Id. at 144.

Plaintiff and decedent were both employees and named beneficiaries under an employee accidental death and personal loss (ADPL) policy. The policy was issued by Aetna through plaintiff's and decedent's employer, Integrated Services Company (Inserv), and plaintiff seeks $200,000: $25,000 for basic life insurance, $50,000 for decedent's basic ADPL, $100,000 for decedent's dependent ADPL, and $25,000 for plaintiff's basic ADPL. Dkt. ## 71, at 15; 76, at 11. Under the policy, Aetna acts as the administrator and payer of the claims. Dkt. # 71, at 17. The Plan provides: "Keep in mind that you cannot receive coverage under this Plan as: [1] both an employee and a dependent; or [2] [a] dependent of more than one employee." Dkt. # 68-1, at 52. The Plan further provides:

> [n]o benefits are payable for a loss caused or contributed to by:
> . . .
> ■ Use of alcohol or intoxicants or drugs while operating any form of a motor vehicle whether or not registered for land, air or water use. A motor vehicle accident will be deemed to be caused by the use of alcohol, intoxicants or drugs if it is determined that at the time of the accident you or your covered dependent were:
> . . .
> – Operating the motor vehicle while under the influence of an intoxicant or illegal drug; or
> – Operating the motor vehicle while under the influence of a prescription drug in excess of the amount prescribed by the physician;
> . . . .

---

[2] Even using a multiplier of 1.5, which the registered nurse opined was the appropriate number to adjust a post mortem sampling, 2.2 mcg/mL (or 0.22 mg%) of methamphetamine is within the toxic range. Dkt. # 68-3, at 144.

Id. at 71.

Following decedent's death, plaintiff submitted a claim for basic life insurance, basic ADPL benefits in her own name, and basic and dependent ADPL benefits in decedent's name. Dkt. # 71, at 8, 10. On June 7, 2018, Aetna sent a letter to plaintiff denying her claim for basic and dependent ADPL benefits in decedent's name, citing the intoxication exclusion. Dkt. # 68-2, at 122-23. Plaintiff submitted another claim for basic life insurance and basic ADPL benefits in her name. On August 14, 2018, Aetna sent plaintiff a letter denying the basic ADPL benefits claim because of the intoxication exclusion and denying both claims because of the employee/dependent exclusion. Dkt. # 68-2, at 3-5. In its review, Aetna was advised that no premium deductions were made for plaintiff in 2017. Dkt. # 68-3, at 99. Plaintiff timely appealed her claims for benefits.

During the appeals process, Aetna used its in-house claims analyst and a registered nurse to review the toxicology report.[3] The in-house analyst concluded that decedent's drug level was within the lethal range, although he used the wrong multiples in the Winek's chart.[4] Id. at 35. The registered nurse opined that

> decedent's amphetamine level was noted to be 0.35 mcg/mL. The toxic range is any value greater than 0.05 and < 0.1. The lethal range is noted to be any value > 0.1 mcg/mL. The methamphetamine level was noted to be 2.2 mcg/mL. This is also

---

[3] Plaintiff argues that the registered nurse is an in-house nurse and, thus, was unqualified to make a determination of whether decedent was under the influence of drugs at the time of his death. Dkt. ## 71, at 15; 76, at 8. The Court finds this fact to be immaterial because, as discussed in IV.A. infra, the toxicology report is clear that decedent was under the influence of drugs when the accident occurred.

[4] In the Winek's chart, mg/mL * 100 = mg%. See Dkt. # 68-3, at 135. For some reason, Aetna interpreted mcg/mL as equating to mg%. In other words, all of the calculations by Aetna should have been moved to the left one decimal point. (2.2 mcg/mL = 0.0022 mg/mL. 0.0022 mg/mL * 100 = 0.22 mg%.)

> within the lethal range. The [t]oxic range is 0.06-0.50; lethal range is any value greater than 1.0. . . . It is my clinical opinion that the decedent was not taking the prescribed Adderall 30 mg tabs by mouth twice daily. It would appear that the decedent was taking more than the prescribed dosage.

Id. at 75-76. In addition, one of the claims analysts for Aetna made notes that he spoke with the toxicologist, who stated that

> they did not run test[s] to see what type of methamphetamine had positive results[;] he did say that [in] most cases 99% of the time it is the illicit substance that is found positive. However, he cannot comment or confirm that that is the case for this test that was run. Claim pending for Rx records.

Id. at 33-34. Aetna denied plaintiff's appeal, stating that it had reviewed: the death certificate, proof of death claim form for basic and supplemental life insurance, proof of death form for dependent life insurance coverage, enrollment history, the collision report, the toxicology report, the autopsy report, the lab analysis, and decedent's prescription history. Dkt. # 68-2, at 5.

Plaintiff seeks basic life insurance, ADPL benefits and dependent ADPL benefits in decedent's name, and basic ADPL benefits in her name. Dkt. # 2. She also alleges breach of fiduciary duty by Inserv and one of its employees, Donna Matlock; however, her claim for breach of fiduciary duty is not stated as a separate claim, see id. at 2, but rather as an equitable argument.

## II.

### Supplement to the Record

On August 26, 2019, a magistrate judge entered an opinion and order (Dkt. # 62) granting in part and denying in part plaintiff's motion for discovery (Dkt. # 44). Plaintiff sought leave to depose Matlock; the magistrate judge allowed plaintiff to depose Matlock to develop her breach of

fiduciary duty argument,[5] Dkt. # 62, at 9, but cautioned that Matlock's deposition may not be necessary in the Court's de novo review of the record. However, the Court now finds that Matlock's deposition is relevant to the disposition of this case on the issue of de facto or functional fiduciary, and therefore allows the supplementation of the record with the deposition testimony of Matlock.

Matlock testified in her deposition that she works for Inserv as the human resources manager and as part of her duties, she administers Inserv's plans. Dkt. # 71-1, at 6-7. She testified that she did not have a copy of the Plan until after decedent's death. Id. at 10. Matlock did not meet either decedent or plaintiff until after decedent's death. Id. at 13. She handled any paperwork relevant to their request for benefits, including the enrollment form. Id.

She testified that she was unaware of the employee/dependent exclusion. Id. at 18. She also testified that no one at Inserv would have been aware of that term. Id. Matlock further testified that no one from Aetna would have known that plaintiff should not have been enrolled in the Plan due to the employee/dependent exclusion. Id. at 24. Matlock testified: "[T]hat's part of why, in the acknowledgment on the last page where the employee signs . . . that if there's anything here that [Inserv] didn't know . . . that the [P]lan document covers it. And [plaintiff] acknowledged it. She understood that the [P]lan governed the eligibility." Id. However, plaintiff did not get a copy of the Plan. Id.

Matlock testified that plaintiff was laid off by Inserv at the end of 2016, but was rehired in January 2017. Id. at 19. Matlock testified that no premiums were deducted for the dependent ADPL

---

5   The magistrate judge referred to plaintiff's breach of fiduciary duty argument as a "claim." See Dkt. # 62, at 7. The undersigned disagrees with the magistrate judge that plaintiff makes a separate claim for breach of fiduciary duty; however, whether alleged breach of fiduciary duty is an argument or a separate claim is immaterial, because the Court is considering the argument. See Part IV.C. infra.

coverage in 2017. Id. at 25. In addition, Matlock refunded plaintiff all of the premiums for the dependent coverage "[f]rom the very beginning, because [Inserv] never should've charged her for that, because she shouldn't have been allowed to sign up for it." Id. at 26. Matlock testified that the Plan's benefits were communicated through a summary that was around ten pages long. Id. at 27. However, this summary does not include the employee/dependent exclusion. Id. at 27-28. Inserv rehired plaintiff after decedent's death, but did not reinitiate new hire paperwork. Id. at 34.

Matlock testified on cross-examination that she did not believe that plaintiff had contributions or premiums withheld from the year 2017. Id. at 36-37. In fact, plaintiff was not working the requisite number of hours in December 2017 (when decedent died) to be eligible to participate in the Plan. Id. at 37. Neither plaintiff nor decedent ever asked for a copy of the Plan. Id. at 38.

### III.

### Standard of Review

As a plan beneficiary, plaintiff has the right to federal court review of benefit denials and terminations under ERISA. "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans." Firestone, 489 U.S. at 113. Specifically, 29 U.S.C. § 1132(a)(1)(b) grants plaintiff the right "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The default standard of review is de novo. However, when a plan gives the claims administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of a plan, a challenge under section 1132(a)(1)(B) is to be reviewed under an arbitrary and capricious standard. See Firestone, 489 U.S. at 115 (courts must apply the appropriate

standard "regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest. Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.").

Under the two-tier "sliding scale" approach adopted by the Tenth Circuit, a "reduction in deference is appropriate" where there is an inherent or proven conflict of interest. Fought v. UNUM Life Ins. Co. Of America, 379 F.3d 997, 1006 (10th Cir. 2004) (per curiam), abrogated in part on other grounds by Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 116 (2008). If plaintiff shows an inherent or proven conflict of interest, deference to the decision is reduced and the burden shifts to the plan administrator or fiduciary to prove "that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." Id. However, if the plan administrator operates under a "standard" conflict of interest, the conflict of interest is simply "one factor in determining whether the plan administrator's denial of . . . benefits to plaintiff was arbitrary and capricious." Id. at 1005. When an employer establishes a self-funded benefits plan and serves as the plan administrator or fiduciary, this is a standard conflict of interest rather than an inherent conflict of interest. Wolberg v. AT&T Broadband Pension Plan, 123 Fed. App'x 840, 845 (10th Cir. Jan 6, 2005)[6]; Slocum v. UNUM Life Ins. Co. of America, 2007 WL 2461690, *4 n.1 (D. Kan. Aug. 28, 2007). To determine the severity of the conflict of interest, a court should consider four factors:

---

[6] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

> (1) the plan is self-funded; (2) the company funding the plan appointed and compensated the plan administrator; (3) the plan administrator's performance reviews or level of compensation were linked to the denial of benefits; and (4) the provision of benefits had a significant economic impact on the company administering the plan.

Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan, 379 F.3d 1168, 1175 (10th Cir. 2004) (quoting Kimber v. Thiolkol, 196 F.3d 1092, 1098 (10th Cir. 1999)).

The Court will analyze the four Finley factors to determine the severity of the conflict of interest and whether it is a standard conflict of interest or an inherent conflict of interest. Aetna was the administrator and insurer of the Plan, which indicates a conflict of interest. Inserv, as the company funding the Plan, appointed and compensated Aetna as the Plan's administrator, indicating a conflict of interest. Because Aetna's employees reviewed the Plan and denial of benefits, their performance reviews and levels of compensation were likely linked to the denial of benefits. Finally, there is no evidence that the claimed benefits—$200,000—would have a significant economic impact on Aetna. On balance, the conflict of interest is severe because Aetna administered and insured the Plan. The Court will thus reduce its deference to Aetna under the substantial evidence review.

"'Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker].' Substantial evidence requires 'more than a scintilla but less than a preponderance.'" Sandoval v. Aetna Life & Cas. Inc. Co., 967 F.2d 377, 382 (10th Cir. 1992) (citations omitted). "The district court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest."

Allison v. Unum Life Ins. Co. of America, 381 F.3d 1015, 1022 (10th Cir. 2004). The Court considers the record as a whole, but it considers only that information available to the plan administrator at the time the decision was made. Hall v. Unum Life Ins. Co. of America, 300 F.3d 1197, 1201 (10th Cir. 2002); Chambers v. Family Health Plan Corp., 100 F.3d 818, 823 (10th Cir. 1996) ("The reviewing court may consider only the evidence that the administrators themselves considered."). The Court must "take into account whatever in the record fairly detracts from the weight of the evidence in support of the administrator's decision." Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994) (internal citations and quotation marks omitted). The Court gives less deference to an administrator's conclusions if the administrator fails to gather or examine relevant evidence. See Caldwell v. Life Ins. Co. of N. America, 287 F.3d 1276, 1282 (10th Cir. 2002). Yet, the Court "will not set aside a benefit decision if it was based on a reasonable interpretation of the plan's terms and was made in good faith." Trujillo v. Cyprus Amax Minerals Co., Ret. Plan Comm., 203 F.3d 733, 736 (10th Cir. 2000).

## IV.

In determining whether Aetna abused its discretion in denying plaintiff's claim, the Court must consider whether it was reasonable for Aetna to find that decedent was under the influence of intoxicating drugs at the time of his death. Next, the Court must determine whether the plain language of the Plan showed that plaintiff could not recover benefits as both an employee and a dependent. Finally, the Court will consider a purely legal question of whether Aetna should be estopped from denying benefits because Inserv and Matlock allegedly were functionary fiduciaries.

**A.**

The Plan language states that, to be a "Covered Loss" for ADPL benefits, "[t]he loss must be caused directly, and apart from any other cause by that bodily injury within 365 days after the accident." Dkt. # 68-1, at 63. Therefore, as a first condition, decedent's death must have been caused by the motor vehicle accident, and by no other causes. The Official Oklahoma Traffic Collision Report shows "no skid marks or yaw marks on the road to indicate evasive movement from [the] vehicle . . . ." Dkt. # 68-2, at 102. Decedent's death certificate shows the cause of death as "multiple blunt force injuries." Dkt. # 68-3, at 80. The official cause of death listed in the autopsy report is "multiple blunt force injuries" and the manner of death as "accident." Id. at 65. However, the autopsy report shows that decedent's "toxicology [was] positive for methamphetamine." Id. The toxicology report shows that decedent tested positive for 0.35 mcg/mL of amphetamine and 2.2 mcg/mL of methamphetamine post mortem. Id. at 73. The autopsy report also shows that decedent had "a pipe containing a green leafy substance." Id. at 66. It is unclear whether decedent's death was caused by the influence of drugs, or whether it was purely an accident.[7] However, the Court need not rely on the direct causes clause because the intoxication clause applies.

The Plan contains an exclusions clause that states:

[n]o benefits are payable for a loss caused or contributed to by: . . . Use of alcohol or intoxicants or drugs while operating any form of a motor vehicle whether or not registered for land, air or water use. A motor vehicle accident will be deemed to be

---

[7] Importantly, plaintiff provides no explanation for why decedent's toxicology report showed that he was under the influence of amphetamines and methamphetamine. She relies only on decedent's prescription for Adderall. See Hancock v. Metro. Life Ins. Co., 590 F.3d 1141, 1155 (10th Cir. 2009) (holding that the claimant had the initial burden of proving that the loss was covered under the plan).

11

> caused by the use of alcohol, intoxicants or drugs if it is determined that at the time of the accident you or your covered dependent were:
>
> . . .
>
> - Operating the motor vehicle while under the influence of an intoxicant or illegal drug; or
> - Operating the motor vehicle while under the influence of a prescription drug in excess of the amount prescribed by the physician
>
> . . . .

Dkt. # 68-1, at 71. Aetna relied on the toxicology report showing that decedent tested positive for 0.35 mcg/mL of amphetamine and 2.2 mcg/mL of methamphetamine post mortem when it denied benefits. Methamphetamine is "an intoxicant or illegal drug." Therefore, Aetna did not act unreasonably by relying on the toxicology report to deny plaintiff's claim for benefits.

Plaintiff argues that Aetna's determination based solely on the toxicology report was arbitrary and capricious. Dkt. # 71, at 23. Plaintiff argues that Aetna ignored decedent's prescription for Adderall, as well as his negative random urinalysis drug test just weeks before the accident. Id.; Dkt. # 76, at 6. However, just because decedent tested negative for drugs weeks prior to the accident does not mean that he was not under the influence of drugs during and just before the accident. Plaintiff further argues that Aetna should have consulted an independent or qualified medical consultant to interpret the toxicology report. Dkt. # 71, at 23-24. However, the toxicology report is clear that decedent was under the influence of methamphetamine, which is "an intoxicant or illegal drug." See Dkt. # 68-1, at 71. "[T]he role of methamphetamine in [decedent's] death is a medical question, but it is not so complex that it cannot be resolved by review of the administrative record." Moore v. Unum Provident Corp., 116 Fed. App'x 416, 421 (4th Cir. 2004) (unpublished). Even if decedent was taking his Adderall as prescribed and that was the reason for his 0.35 mcg/mL amphetamine

level in the toxicology report, he still tested positive for methamphetamine, which is "an intoxicant or illegal drug."

Plaintiff argues that Aetna acted unreasonably by relying on the claims analyst and registered nurse, whose "opinions were formed solely upon reviewing a document entitled 'Winek's Drug & Chemical Blood-Level Data 2001.'" Dkt. ## 71, at 24; 76, at 4-5. Plaintiff argues that the Winek's chart, by its very terms, does not apply to post mortem lab results. Dkt. # 71, at 24-25. The Court recognizes that the claims analyst and registered nurse applied the wrong multiples when reviewing the Winek's chart, and perhaps there were better ways to determine decedent's post mortem intoxicant level. However, as discussed above, Aetna also relied on the toxicology report, which shows that decedent tested positive for methamphetamine. The toxicologist opined that "99% of the time it is the illicit substance that is found positive." Dkt. # 68-3, at 33-34. Therefore, Aetna need not have relied on the Winek's chart in determining that decedent tested positive for an illegal drug, because he tested positive for methamphetamine, which is a Schedule II (illegal) drug.[8] The Court finds that not only did Aetna act reasonably in its decision to deny life insurance and basic and

---

[8] Plaintiff argues that the toxicologist could not confirm that the substance for which decedent tested positive was the illicit substance. Dkt. # 76, at 2. However, all methamphetamine is of the illicit type and, regardless, Aetna was at a minimum reasonable in concluding that the methamphetamine for which the decedent tested positive was of the illicit type.

dependent ADPL benefits, but also its decision is supported by substantial evidence based on the intoxicant and illegal drugs exclusion.[9]

**B.**

Defendants argue that plaintiff was not eligible for benefits under the Plan due to the employee/dependent exclusion. Dkt. # 72, at 4-7; Dkt. # 75, at 17-18. Plaintiff spends no time in her opening brief arguing that Aetna acted unreasonably in relying on the employee/dependent exclusion. Rather, her arguments are that Inserv and Matlock breached their fiduciary duty by accepting her payments for such coverage, and that she never received a copy of the Plan, which are both addressed in Part IV.C. infra. However, the Court still must determine in its de novo review whether Aetna acted reasonably in denying supplemental ADPL benefits because she was both an employee and a dependent.

The Plan provides: "Keep in mind that you cannot receive coverage under this Plan as: [1] both an employee and a dependent; or [2] [a] dependent of more than one employee." Dkt. # 68-1, at 52. Plaintiff and decedent were both employed by Inserv. Dkt. # 71, at 7. Further, plaintiff was a dependent of decedent. Dkt. # 68-3, at 82. The plain language of the Plan excludes plaintiff from recovering basic and supplemental ADPL benefits in her name when she also claimed the benefits

---

[9] Plaintiff argues that Loan v. Prudential Insurance Co. of America, 370 Fed. App'x 592 (6th Cir. 2010), applies to this case. In Loan, the plaintiff's husband died after falling down stairs. Id. at 593. His toxicology report showed that his blood alcohol level (BAC) was above the legal limit for driving. Id. at 594. On this basis, Prudential denied the plaintiff benefits. Id. However, the Sixth Circuit reversed, reasoning that the toxicology report had been challenged by the plaintiff as inaccurate, and Prudential relied only on an in-house medical examiner to review the toxicology report. Id. at 596-97. The Court finds that Loan is inapplicable to this case. Here, in contrast to Loan, plaintiff has not challenged the accuracy of the toxicology report. Further, Aetna consulted a toxicologist, which is more than Prudential did in Loan.

under decedent's name. Thus, the Court finds that Aetna did not act unreasonably in denying plaintiff's claim for basic life insurance and basic ADPL benefits in her name because she was both an employee and dependent of Inserv.[10]

**C.**

The Court now addresses plaintiff's argument that Matlock and Inserv breached their fiduciary duties and, thus, Aetna should be equitably estopped from denying her claim for benefits. Plaintiff first argues that Matlock and Inserv were de facto (or functional) fiduciaries. Dkt. # 71, at 19. Plaintiff also argues that Inserv and Matlock breached their fiduciary duties by accepting her payments. Id. at 22. Finally, plaintiff argues that Inserv and Matlock breached their fiduciary duties by not providing her with a copy of the Plan, which contains the employee/dependent exclusion. Id. As a result of this alleged breach, plaintiff argues that Aetna should be estopped from denying her

---

[10] In addition, as defendants argue, plaintiff is not eligible for benefits because she was not a full-time employee when decedent died, and no premiums were being deducted from her paycheck. Dkt. # 72, at 3-4; Dkt. # 75, at 17-20; see Dkt. # 68-1, at 51 (showing that employees are in an "eligible class" only if they are "a regular full-time employee . . . ."); Dkt. # 71-1, at 25, 37 (deposition of Matlock in which she testified that plaintiff was not being deducted premiums, and that she was not a full-time employee when decedent died). Defendants further argue that, because plaintiff was not eligible to recover under the Plan, the Court lacks subject matter jurisdiction. Dkt. # 72, at 4. However, a participant or beneficiary may sue under an ERISA plan. See Yarbary v. Martin, Pringle, Oliver, Wallace & Bauer, LLP, 643 Fed. App'x 813, 816 (10th Cir. 2016) ("In the ERISA context, civil suits may only be filed 'by a participant or beneficiary' of an ERISA plan . . . .") (quoting 29 U.S.C. § 1132(a)(1)). Plaintiff is claiming $200,000—$150,000 for decedent's basic and supplemental ADPL, and $50,000 for her basic life insurance and basic ADPL. Dkt. # 71, at 15; cf. Dkt. # 2, at 4-5; 18-CV-669-CVE-JFJ Dkt. # 2, at 6 (showing a total of $200,000 claimed). Although the Court may not have subject matter jurisdiction in regard to plaintiff's claim as an employee, it has subject matter jurisdiction regarding decedent's basic and supplemental ADPL, because plaintiff was a beneficiary. See Dkt. # 68-3, at 84-87.

15

benefits.[11] Id. at 18. Defendants argue that plaintiff cannot maintain a cause of action for breach of fiduciary duty because she is not alleging injuries to the Plan as a whole but, rather, is alleging individual injuries. Dkt. # 72, at 8; Dkt. # 75, at 26-27. Defendants further argue that Matlock and Aetna did not breach an ERISA fiduciary duty. Dkt. # 72, at 8-11; Dkt. # 75, at 27. Finally, defendants argue that equitable relief is unavailable to plaintiff because the Court is unable to provide equitable relief in the context of ERISA. Dkt. # 72, at 11-12.

"ERISA imposes fiduciary duties on those responsible for plan management and administration." Teets v. Great-West Life & Annuity Ins. Co., 921 F.3d 1200, 1206 (10th Cir. 2019) (citing ERISA §§ 404, 406, 29 U.S.C. §§ 1104, 1106). There are two types of fiduciaries: a named fiduciary and a functional fiduciary. "First, the instrument establishing a plan must specify at least one fiduciary—typically the employer or a trustee—that will have the 'authority to control and manage the operation and administration of the plan.'" Id. (quoting ERISA § 402(a), 29 U.S.C. § 1102(a)). This is a "named fiduciary." See id. "Second, a party not named in the instrument can nonetheless be a 'functional fiduciary' by virtue of the authority the party holds over the plan." Id. Plaintiff argues that Inserv and Matlock had discretionary authority over the Plan and, therefore, were functional fiduciaries. Dkt. # 71, at 19-20. However, the Tenth Circuit is clear that one can be a de facto or functional fiduciary only by "assumption of fiduciary obligations." In re Luna, 406 F.3d 1192, 1201 (10th Cir. 2005). Further, a functional fiduciary must "exercise[] discretionary authority or control" of the Plan. Teets, 921 F.3d at 1206. Neither Inserv nor Matlock assumed

---

[11] Although plaintiff argues that "defendants" should be estopped from denying her benefits, it is really Aetna that denied her benefits and has the power and duty to do so; Inserv and Matlock do not. Therefore, the Court will assume that plaintiff is arguing that Aetna should be estopped from denying her benefits.

16

fiduciary obligations, because neither made the decision to deny plaintiff benefits; that decision was solely within Aetna's discretion. That Matlock determined "eligibility for enrollment" in the Plan is not enough to make her or Inserv a functional fiduciary. However, even assuming that Inserv and Matlock were functional fiduciaries, plaintiff's equitable estoppel argument fails.[12]

First, nowhere in plaintiff's complaint does she raise a claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), which the Tenth Circuit has ruled establishes a claim for equitable estoppel. See Lebahn v. Nat'l Farmers Union Uniform Pension Plan, 828 F.3d 1180, 1187 (10th Cir. 2016). Second, even if she had raised a claim under 29 U.S.C. § 1132(a)(3), her claim would fail.[13] The Tenth Circuit has assumed without deciding that the elements of an ERISA equitable estoppel claim are:

> 1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party asserting the estoppel; and 5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

---

[12] To the extent that plaintiff seeks to recover under the doctrine of reasonable expectations, that doctrine is inapplicable, because the Plan is clear and unambiguous. See Pirkheim v. First Unum Life Ins., 229 F.3d 1008, 1011 (10th Cir. 2000) ("Where the insuring clause or exclusionary provision is conspicuous, clear, and unequivocal, we conclude application of the common law doctrine of reasonable expectation is improper.").

[13] To the extent that plaintiff is asserting a claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) (which she is not, because she did not raise that claim in her complaint), her claim also fails because a claim for breach of fiduciary duty gives remedies only for injuries to the Plan as a whole, not to individual participants. See Alexander v. Anheuser-Busch Co., Inc., 990 F.2d 536, 540 (10th Cir. 1993) ("[T]he United States Supreme Court has held that § 1132(a)(2) does not authorize a participant or beneficiary to bring a private right of action for damages to redress a breach of fiduciary duty.").

Id. at 1187 n.7.

Here, there was no conduct or language amounting to a representation of material fact. Plaintiff was allegedly provided with a summary of benefits that did not contain the employee/dependent exclusion. Dkt. # 71-1, at 27. Neither she nor Matlock was provided with the Plan. Id. at 24. However, this fact is immaterial because no premiums were being deducted from plaintiff's earnings when decedent died. Id. at 37.[14] Therefore, she presumably was not enrolled in the Plan at the time of decedent's death. Further, when plaintiff was enrolled in the Plan, Matlock refunded her premiums as soon as she became aware that plaintiff was not eligible to claim benefits for decedent. Id. at 26. This happened before decedent died. To the second Lebahn element, Aetna, the party to be estopped, was not aware of the application of the employee/dependent exclusion to plaintiff and decedent. Matlock testified in her deposition that there is no way Aetna could have been aware of the fact that they were subject to this exclusion. Id. at 24. To the third Lebahn element, plaintiff has provided no evidence that Aetna intended that she rely on the absence of the exclusion. From the deposition of Matlock, this appears to be a fact that Inserv merely overlooked and which Aetna could not have known. Aetna did not make a misrepresentation and in fact, as soon as Matlock became aware of the exclusion, Inserv refunded all of plaintiff's premiums. Id. at 26. To the fourth Lebahn element, plaintiff asserts that she was unaware of the exclusion, and Matlock did not dispute this fact. Id. at 24; Dkt. # 71, at 20. As to the fifth Lebahn element, plaintiff did not detrimentally or justifiably rely on any misrepresentation because all of her premiums were refunded

---

[14] Contrary to plaintiff's argument that this fact was discovered only after this case was filed, see Dkt. # 76, at 2, this was a fact made known to Aetna during its review. See Dkt. # 68-3, at 99.

and she was not charged premiums during the period in which decedent died. Dkt. # 71-1, at 26, 37. In summary, plaintiff's argument for equitable estoppel is denied because it does not meet the Tenth Circuit's Lebahn elements.[15]

Plaintiff argues that Aetna should be equitably estopped from denying her benefits because Inserv and Matlock (as functional fiduciaries) accepted her payments under the Plan even though she did not qualify for benefits in decedent's name. Dkt. # 71, at 22. However, as discussed, Inserv refunded all of plaintiff's premiums as soon as it became aware (through Matlock) of the application of the exclusion. Dkt. # 71-1, at 26, 37; see Callery v. U.S. Life Ins. Co. in City of New York, 392 F.3d 401 (10th Cir. 2004) (holding that the plaintiff was not entitled to equitable relief because "restitution recoveries are based upon a defendant's gain, not on a plaintiff loss," and the plaintiff had "already been refunded the premium payments made after her divorce; she ha[d] thus already received restitution damages."). Also, plaintiff was not making payments at the time of decedent's death. Id. at 37.

Plaintiff further argues that Aetna should be equitably estopped from denying her benefits because she was not provided with the Plan. Dkt. # 71, at 22. However, plaintiff signed an acknowledgment form stating that her eligibility for benefits was subject to the terms of the Plan. Dkt. # 71-1, at 19; see Alexander, 990 F.2d at 539 (holding that the claimant had no viable equitable estoppel claim when the plain language of the plan document precluded benefits and there was no intent to deceive). Further, there is no evidence that plaintiff asked for the Plan, and plaintiff cites

---

[15] Further, plaintiff's equitable estoppel argument must be denied because she did not suffer any damages: she was refunded all premiums paid prior to decedent's death and was not paying premiums when decedent died. Dkt. # 71-1, at 26, 37.

19

no authority that it was Aetna's responsibility to furnish the Plan. See Johnson v. Health Care Svs. Corp., 262 F. Supp. 3d 1260, 1265 (N.D. Okla. June 23, 2017) ("ERISA requires the benefit plan administrator, in this case plaintiff's employer . . . to fulfill" the duty of providing a copy of the benefit plan.).

V.

**Conclusion**

The Court finds that Aetna did not arbitrarily or capriciously deny plaintiff benefits. First, the intoxication clause excludes plaintiff from receiving benefits. Second, the employee/dependent clause excludes plaintiff from receiving benefits. Plaintiff does not appear to have been enrolled in the Plan at the time of decedent's death, so this argument is meritless even without the employee/dependent exclusion. Finally, neither Inserv nor Matlock was a functional fiduciary, and plaintiff has not satisfied her burden of meeting the elements of equitable estoppel.

**IT IS THEREFORE ORDERED** that defendant Aetna Life Insurance Company's denial of plaintiff's claim for life insurance and accidental death and personal loss benefits was not unreasonable, unsupported, or contrary to the clear weight of the administrative record. The ensuing denial of benefits was, therefore, neither arbitrary nor capricious.

A separate judgment for defendants is entered herewith.

**DATED** this 1st day of April, 2020.

*Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE